IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHNNIE MCCOLLUM,<br>    Plaintiff<br><br>    v.<br><br>MICHAEL H.W. PRIES, et al.,<br>    Defendants | :<br>:<br>:   No. 1:22-cv-01710<br>:<br>:   (Judge Rambo)<br>:<br>:<br>: |

**MEMORANDUM**

Pro se Plaintiff Johnnie McCollum ("Plaintiff"), who is a state prisoner incarcerated at State Correctional Institution Smithfield in Huntingdon, Pennsylvania, has commenced the above-captioned action by filing a complaint pursuant to the provisions of 42 U.S.C. § 1983 ("Section 1983"), asserting violations of his constitutional rights while incarcerated as a pretrial detainee at Dauphin County Prison ("DCP") in Harrisburg, Pennsylvania. (Doc. No. 1.) In accordance with the Prison Litigation Reform Act,[1] the Court has conducted an initial review of Plaintiff's complaint. For the reasons set forth below, the Court will dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted. However, the Court will grant Plaintiff leave to file an amended complaint.

---

[1] See The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996).

I. **BACKGROUND**

On October 28, 2022, while Plaintiff was incarcerated as a pretrial detainee at DCP, he filed his Section 1983 complaint against the following thirteen (13) Defendants: Michael H.W. Pries, George P. Hartwick, and Chad Saylor, Dauphin County Commissioners; John F. Cherry, the President Judge of the Court of Common Pleas of Dauphin County; William Wenner, a Magisterial District Judge in Harrisburg, Pennsylvania; Nicholas Chimienti, a Sheriff in Dauphin County; James Markel, Acting Controller of the Dauphin County Prison Board ("DCP Board"); Frank Lavery, Jr., Solicitor of the DCP Board; Gregory Briggs, the Warden of DCP; Lionel Pierre, Deputy Warden of DCP; Roger Lucas, the Major of Security at DCP; Mike Welker, the Grievance Coordinator at DCP; and Damon Fields, the Chaplain at DCP. (Doc. No. 1 at 1-6.) In addition to his complaint, Plaintiff also filed a certified motion for leave to proceed in forma pauperis and his prisoner trust fund account statement. (Doc. No. 2.) The Court, having reviewed Plaintiff's motion and trust fund account statement, will grant Plaintiff leave to proceed in forma pauperis and will deem his complaint filed.

In his complaint, Plaintiff alleges that the events giving rise to his claims occurred over "the last 26 months" while he was incarcerated as a pretrial detainee at DCP. (Doc. No. 1 at 7.) These alleged events concern the following two (2) categories: lockdowns and access to religious material. (Id. at 7-14.)

With respect to the lockdowns, Plaintiff alleges that the inmates at DCP "have been continuously locked down due to a severe staff shortage[.]" (Id. at 7.) Plaintiff alleges that these lockdowns last "anywhere from 19-23 days a month[.]" (Id.) As a result, Plaintiff claims that he is not consistently "getting [his] hour of exercise per day[,]" and that he is "unable to receive programming" despite the fact that the "programs serve as a predetermining factor of what [his] outcome will be in [c]ourt." (Id.)

Plaintiff alleges that, on numerous occasions, he filed grievances related to these lockdowns, but that all of his grievances were deemed non-grieveable by Defendant Welker, who explained to Plaintiff that he, Defendant Briggs, and Defendant Pierre made this decision "as a team." (Id.) In addition, Plaintiff alleges that Defendant Lucas responded to one of his grievances, stating that "prison schedules are not up for negotiation with inmates[,]" and that Defendant Welker also stated "the same exact thing" in response to another one of his grievances. (Id.) Plaintiff alleges that he subsequently wrote request slips to Defendants Briggs and Pierre in order to put them on notice and to give them the opportunity "to rectify the situation," but that these requests slips were filed "to no avail." (Id.)

In addition to filing grievances and request slips at DCP, Plaintiff alleges that the DCP Board[2] knew about the lockdowns and being understaffed, but that it failed to address these problems. (Id. at 10.) Plaintiff alleges that this puts him in a "[c]ompromising position" because, in addition to not being afforded recreation, he has "yet to complete a program" and that, "in all reality[,] the amount of programming [he] participate[s] in serves as a pre-determining factor in the outcome of [his] legal proceedings." (Id. at 11.)

Plaintiff also alleges that his right to practice his religion was "[c]onstrained" while incarcerated at DCP. (Id. at 8.) In support, he alleges that his religion is Santeria and that the "Administration" failed to upload digital books on the religious library for his religion, even though "they did [this] for Islam, Catholicism, Christianity, Judaism, Hinduism, Buddhism, Moors Nation of Islam etc." (Id. (explaining that DCP has "digitized books and [a] law library in order to prevent the smuggling of contraband into the facility" and that religious books were also "uploaded" onto the religious library "so inmates can still study and practice their religion").) Plaintiff alleges that he had "been waiting over a year for Santeria

---

[2]  Plaintiff does not identify who was on the DCP Board at this time or if any particular member of the DCP Board had such knowledge and, thus, it is unclear whether Plaintiff is referring to either Defendants Markel or Lavery in connection with this allegation.

material" to be uploaded to "the religious library, instead of the general library." (Id.)

In connection with these allegations, Plaintiff acknowledges that he was "given one Santeria book" and that "3 books were added on the general library." (Id. at 9.) Plaintiff claims, however, that there are several issues with this. (Id.) More specifically, Plaintiff claims that: "there is a waiting list for the book[;]" inmates "only get the book for 14 days[;]" and inmates "can only sign the book out 3 times." (Id.) Plaintiff also alleges that he should not have had "to wait in order to read books [on his] faith" (id. at 10) and that this is unlike "all other religions[,]" which have the books uploaded on the religious library (id. at 9).

Like his complaints concerning the alleged lockdowns at DCP, Plaintiff alleges that he also filed a grievance "last year" and that Defendant Briggs, instead of answering it, "kicked it back to [Defendant] Fields" and that this "hindered [him] from exhausting" his administrative remedies.[3] (Id.) Plaintiff alleges that he filed another grievance but that he "was basically [c]oerced by the Grievance Coordinator to accept the paperback printed book Santeria[,]" and stated to Plaintiff, "this is all you are going to get you mind [sic] as well leave the situation alone before you piss

---

[3] Apart from these allegations concerning the grievance he filed, Plaintiff asserts no allegations against Defendants Briggs or Fields in relation to his request for religious material.

the wrong people off."[4] (Id.) Plaintiff alleges that he "felt like [he] was forced to sign off on the grievance" and that "Santeria was never made accessible on the religious library[.]" (Id.)

In connection with all of these allegations, Plaintiff asserts that his rights under the First Amendment were violated because he was denied religious material while incarcerated at DCP. (Id. at 12.) In addition, Plaintiff appears to assert that his rights under the Fourteenth Amendment were violated because other "religious adherents don't have the same problem" at DCP. (Id.) Finally, Plaintiff asserts that his rights under the Fourteenth Amendment were violated because of the "continuous lockdowns" at DCP while he was incarcerated there. (Id.)

As a result of these alleged violations, Plaintiff claims that he has been injured because he was not "able to practice [his] religion or order books of [his] choice[.]" (Id.) Plaintiff also claims that he is suffering from "severe depression, anxiety, panic depression, bipolar mood swings, difficulties with thinking and with concentration, agitation [and] irritability" because of the "continuous lockdowns[.]" (Id.) As for relief, Plaintiff seeks monetary relief, as well as various forms of injunctive relief. (Id.; id. at 12, 14 (seeking an Order from the Court that would require the DCP Board to: (1) implement a "Publishers Only Rule" so that DCP inmates can resume

---

[4] Plaintiff does not identify the Grievance Coordinator by name and, thus, it is unclear whether Plaintiff is referring to Defendant Welker.

6

ordering books of their choice; (2) increase the hourly pay of DCP employees to resolve the "staff shortage problem[;]" and (3) explain, "with specificity[,] the chain of command for the grievance appeal process").)

## II.   LEGAL STANDARD

Pursuant to 28 U.S.C. § 1915(e)(2), district courts are required to review complaints in civil actions where a litigant is proceeding in forma pauperis. See 28 U.S.C. § 1915(e)(2).  If the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief, then the district court must dismiss the complaint.  See id.  In dismissing claims under § 1915(e)(2), district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999). To avoid dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient factual matter" to show that its claims are facially plausible.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

When evaluating the plausibility of a complaint, the Court is required to "accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint."   See Mayer v. Belichick, 605 F.3d 223, 229 (3d Cir. 2010); Kedra v. Schroeter, 876 F.3d 424, 434

(3d Cir. 2017) (stating that the court "must accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]" (citation and internal quotation marks omitted)).

Additionally, in the specific context of pro se prisoner litigation, a district court must be mindful that a document filed pro se "is to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted).

## III.   DISCUSSION

### A.   Section 1983

Plaintiff has filed his complaint pursuant to the provisions of Section 1983, asserting violations of his rights under the First and Fourteenth Amendments.  (Doc. No. 1.)  Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id.  Thus, "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or

immunities secured by the Constitution or laws of the United States." See Shuman v. Penn Manor School Dist., 422 F.3d 141, 146 (3d Cir. 2005) (citation omitted). Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." See id. (citation omitted).

### 1. Defendants Pries, Hartwick, Saylor, Cherry, Chimienti, Markel, Wenner, and Lavery

#### a. Personal Involvement

In order for liability to attach under Section 1983, Plaintiff must sufficiently allege that each defendant was personally involved in the act or acts that he claims violated his federally protected rights. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." Chavarriaga v. New Jersey Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015) (citing Rode, 845 F.2d at 1207); Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (stating that "[p]ersonal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence'" (quoting Rode, 845 F.2d at 1207)).

Here, there is an absence of allegations in the complaint that would give rise to a plausible inference that Defendants Pries, Hartwick, Saylor, Cherry, Chimienti, Markel, Wenner, and Lavery were personally involved in any asserted deprivation

9

of Plaintiff's federally protected rights. While these individual Defendants have been named in the caption of the complaint (Doc. No. 1 at 1-2) and have also been listed as Defendants in the "DEFENDANT(S)" section of the complaint (id. at 3-6), they have not been mentioned anywhere else in the body of the complaint and/or they have had no allegations of personal involvement asserted against them. Without such allegations of personal involvement, however, liability cannot be imposed against these individual Defendants under Section 1983. Thus, the Court finds that Plaintiff's complaint fails to state a claim upon which relief can be granted against Defendants Pries, Hartwick, Saylor, Cherry, Chimienti, Markel, Wenner, and Lavery. As such, any Section 1983 claims against these Defendants will be dismissed.

### b.     Rule 8 of the Federal Rules of Civil Procedure

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" See Fed. R. Civ. P. 8(a)(2). This short and plain statement must give the defendant fair notice of what the plaintiff's claims are and the grounds upon which those claims rest. See Erickson, 551 U.S. at 93. "In other words, a complaint must do more than allege the plaintiff's entitlement to relief[; it] "has to show such an entitlement with its facts." See Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (citation and internal quotation marks omitted).

As set forth above, Plaintiff's complaint does not allege how Defendants Pries, Hartwick, Saylor, Cherry, Chimienti, Markel, Wenner, and Lavery were personally involved in committing a deprivation of Plaintiff's constitutional rights. As a result, the Court has been left—and Defendants, if served, would also be left—to speculate as to what alleged conduct on their part gives rise to constitutional infringements. Thus, because Plaintiff's amended complaint does not provide fair notice of his claims and/or the grounds upon which those claims rest, as to these specific Defendants, the Court finds that Plaintiff's complaint does not satisfy Rule 8 of the Federal Rules of Civil Procedure. See Garrett v. Wexford Health, 938 F.3d 69, 93 (3d Cir. 2019) ("Naturally, a pleading that is so vague or ambiguous that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8." (citations and internal quotation marks omitted)); Binsack v. Lackawanna Cnty. Prison, 438 F. App'x 158, 160 (3d Cir. 2011) (unpublished) (affirming district court's dismissal of a complaint where it "defie[d] any attempt to meaningfully answer or plead to it, and it left the defendants having to guess what of the many things discussed constituted [a cause of action]").

  2.  **Defendants Welker, Briggs, Pierre, and Lucas**

The only Defendants that Plaintiff discusses with any sort of specificity in the complaint are Defendants Welker, Briggs, Pierre, and Lucas. As set forth above, Plaintiff alleges that he filed grievances at DCP, on numerous occasions, concerning

11

the "continuous lockdowns[,]" but that all of his grievances were deemed non-grieveable by Defendant Welker, who explained to Plaintiff that he, Defendant Briggs, and Defendant Pierre made this decision "as a team." (Doc. No. 1 at 7.) In addition, Plaintiff alleges that Defendant Lucas also responded to one of his grievances, stating that "prison schedules are not up for negotiation with inmates[,]" and that Defendant Welker stated "the same exact thing" in response to another one of his grievances. (Id.) Plaintiff further alleges that he subsequently wrote request slips to Defendants Briggs and Pierre in order to put them on notice and to give them the opportunity "to rectify the situation," but that his requests slips were filed "to no avail." (Id.) Thus, Plaintiff appears to be asserting that these Defendants violated his Fourteenth Amendment rights in relation to the "continuous lockdowns" at DCP. (Id. at 12.)[5]

---

[5] While the mere filing of a grievance is insufficient to impute the actual knowledge that is necessary to demonstrate a defendant's personal involvement in an asserted constitutional violation, see Rode, 845 F.2d at 1207-08, under certain circumstances, a grievance may be sufficient to place a defendant on notice of continued wrongdoing and, thus, may show actual knowledge of and acquiescence in the events that form the basis of the plaintiff's asserted constitutional claims. See, e.g., Sutton v. Rasheed, 323 F.3d 236, 249-50 (3d Cir. 2003) (finding that prisoner-plaintiffs had established the personal involvement of a defendant who had played an "active role" in the continued denial of plaintiffs having access to religious texts and basing this finding, in part, on the fact that the defendant had issued a written response denying a final-grievance-appeal letter from one of the plaintiffs, which requested access to such religious texts); Parkell v. Danberg, 833 F.3d 313, 336 n.14 (3d Cir. 2016) (noting that the Third Circuit's "oft-cited holding in Rode[, 845 F.2d at 1208] that the mere filing of a grievance does not show actual knowledge by a supervisor is not applicable, as [defendant's] letters show that he actually had reviewed the

"[W]hen pretrial detainees[, such as Plaintiff,] challenge their conditions of confinement, [courts] must consider whether there has been a violation of the Due Process Clause of the Fourteenth Amendment." E. D. v. Sharkey, 928 F.3d 299, 307 (3d Cir. 2019) (quoting Hubbard v. Taylor, 538 F.3d 229, 231 (3d Cir. 2008)). The United States Supreme Court has instructed that, when "evaluating the constitutionality of conditions or restrictions of pretrial detention that implicated only the protection against deprivation of liberty without due process of law, . . . the proper inquiry is whether those conditions amount to punishment of the detainee." See Bell v. Wolfish, 441 U.S. 520, 535 (1979). Thus, "[u]nder the Due Process [C]lause, 'a detainee may not be punished prior to an adjudication of guilt.'" See Sharkey, 928 F.3d at 307 (quoting Bell, 441 U.S. at 535)).

In determining whether the challenged conditions of confinement amount to punishment of the pretrial detainee, "[courts] must decide whether [the challenged condition] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." See Bell, 441 U.S. at 538 (citation omitted); Hope v. Warden York Cnty. Prison, 972 F.3d 310, 326 (3d Cir. 2020) (stating that "[t]he touchstone for the constitutionality of detention is whether

---

grievances[,]" and quoting Sutton, 323 F.3d at 249-50 for the following proposition: that "an official who wrote back in response to a grievance had 'played an active role' in a constitutional violation").

13

conditions of confinement are meant to punish or are but an incident of some other legitimate governmental purpose" (citations and internal quotation marks omitted)).

Thus, this determination requires courts to consider whether the challenged conditions were imposed "for the express purpose of punishment, and if not, whether they are rationally connected to a legitimate purpose but excessive in relation to its purpose." See id. at 328 (citing Bell, 441 U.S. at 538). In making this determination, courts are to "consider the totality of the circumstances of confinement[.]" See id. at 326 (explaining that "the totality of the circumstances of confinement" includes "any genuine privations or hardship over an extended period of time, and whether [the challenged] conditions are (1) rationally related to their legitimate purpose or (2) excessive in relation to that purpose" (citations omitted)).

In addition, and importantly, "courts must acknowledge that practical considerations of detention justify limitations on 'many privileges and rights.'" See id. (quoting Bell, 441 U.S. at 545-46). Thus, even though a pretrial detainee is not a convicted prisoner, "a detainee 'simply does not possess the full range of freedoms of an unincarcerated individual.'" See id. (quoting Bell, 441 U.S. at 546). In a similar vein, courts must also acknowledge "the legitimate objectives and difficulties of managing a detention facility[.]" See id. (citation omitted). Judicial deference is, therefore, accorded to a prison administrator "not merely because the administrator ordinarily will, as a matter of fact in a particular case, have a better grasp of his

domain than the reviewing judge, but also because the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial." See Bell, 441 U.S. at 548 (citations omitted).

Thus, in accordance with this governing legal standard, the Court must consider whether the challenged conditions, i.e., the lockdowns at DCP, were for the purpose to punish on the part of Defendants Welker, Briggs, Pierre, and Lucas, and if not, whether the conditions were rationally related to a legitimate purpose or excessive in relation to that purpose. See Hope, 972 F.3d at 328 (explaining that courts are to consider whether the challenged conditions were imposed "for the express purpose of punishment, and if not, whether they are rationally connected to a legitimate purpose but excessive in relation to its purpose" (citing Bell, 441 U.S. at 538)).

In his complaint, Plaintiff alleges that the inmates had "been continuously locked down due to a severe staff shortage." (Doc. No. 1 at 7.) Plaintiff alleges that these lockdowns last "anywhere from 19-23 days a month[.]" (Id.) As a result, Plaintiff claims that he was not consistently "getting [his] hour of exercise per day[,]" and that he was "unable to receive programming" despite the fact that the "programs serve as a predetermining factor of what [his] outcome will be in court." (Id.)

The Court, having carefully reviewed these allegations, finds that Plaintiff's complaint fails to plausibly state a Fourteenth Amendment claim upon which relief can be granted. More specifically, the Court finds that Plaintiff's complaint does not allege that the lockdowns at DCP were imposed by Defendants Welker, Briggs, Pierre, or Lucas for the purpose of punishment. Instead, Plaintiff's complaint alleges that these lockdowns were imposed as the result of "a severe staff shortage." (Id.); see Bell, 441 U.S. at 538 (explaining that "[a] court must decide whether the [challenged condition] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose" (citation omitted)).

In addition, the Court finds that Plaintiff's complaint does not contain sufficient factual allegations concerning the nature and duration of these alleged lockdowns such that the Court could draw an inference that they were excessive in relation to the issues surrounding the allegedly "severe staff shortage" at DCP. (Doc. No. 1 at 7); see Hope, 972 F.3d at 326 (explaining that, absent an intent to punish, courts are to look at "the totality of the circumstances of confinement[,]" which includes whether the challenged "conditions are (1) rationally related to their legitimate purpose or (2) excessive in relation to that purpose" (citations omitted)); Chapolini v. City of Philadelphia, No. 22-cv-284, 2022 WL 815444, at *12 (E.D. Pa. Mar. 17, 2022) (dismissing the pre-trial detainee's Fourteenth Amendment claim concerning the lockdown measures ordered by the commissioner of the Philadelphia

prison system and finding that the pretrial detainee's allegations were insufficient since he failed to allege, among other things, "any specifics about the size of his living space, the extent to which inmates were permitted to move about the prison (if at all) during the lockdown periods, the extent to which recreation or other activities were permitted, or any other circumstances to clarify the conditions in which he was held in connection with the lockdowns at issue[,]" including "how long he was subjected to the challenged conditions").

Thus, for all of these reasons, the Court finds that the allegations in Plaintiff's complaint are insufficient to state plausible claim under the Fourteenth Amendment. The Court will, therefore, dismiss Plaintiff's Fourteenth Amendment claim against Defendants Welker, Briggs, Pierre, and Lucas from the complaint.

### 3. Requests for Injunctive Relief

Since filing his Section 1983 complaint, Plaintiff has been transferred from DCP, a county prison, to SCI Huntingdon, a state correctional institution with the Pennsylvania Department of Corrections. (Doc. No. 4.) Because Plaintiff is no longer incarcerated at DCP, and because there is no alleged expectation that Plaintiff, specifically, will be returned to DCP now that he is in the state system, his claims for injunctive relief are moot. See Sutton, 323 F.3d at 248 (explaining that "[a]n inmate's transfer from the facility complained of generally moots the equitable and declaratory claims"); Parkell, 833 F.3d at 333 (explaining that, in order for the

17

capable-of-repetition exception to apply, the inmate must establish "a reasonable expectation that he, specifically, will again be subjected to the unconstitutional [conditions of confinement]"). As such, the Court will dismiss Plaintiff's claims for injunctive relief from the complaint.

### B. Leave to Amend

The only remaining issue is, therefore, whether Plaintiff should be granted leave to amend his amended complaint. Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." See Foman v. Davis, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted).

However, the Court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment[.]" See id. The Court may also deny leave to amend where the proposed amendment would be futile—that is, where the pleading, "as amended, would fail to state a claim

upon which relief could be granted." See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) (citations and internal quotation marks omitted).

In accordance with this standard, the Court cannot say that granting Plaintiff leave to amend his Section 1983 claims would be futile and, thus, the Court will grant Plaintiff leave to file an amended complaint in order to attempt to cure the deficiencies identified above. Plaintiff is advised that the amended complaint must be complete in all respects. It must be a new pleading that stands by itself without reference to the original complaint or any other document already filed. The amended complaint shall set forth Plaintiff's claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure. Finally, Plaintiff is cautioned that neither conclusory allegations nor broad allegations will set forth a cognizable claim.

### IV.   CONCLUSION

To conclude, the Court will dismiss Plaintiff's complaint (Doc. No. 1) for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2). The Court will also grant Plaintiff leave to file an amended complaint. An appropriate Order follows.

Dated: December 14, 2022          s/ Sylvia H. Rambo
                                  SYLVIA H. RAMBO
                                  United States District Judge