## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHNNIE MCCOLLUM,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:22-cv-01710** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **MICHAEL H.W. PRIES, <u>et al.</u>,** | : | |
| **Defendants** | : | |

### <u>MEMORANDUM</u>

Before the Court is Defendants' motion to dismiss Plaintiff's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 32.) Also before the Court is Plaintiff's motion for leave to amend his amended complaint. (Doc. No. 36.) For the reasons set forth below, the Court will grant in part and deny in part Defendants' motion and deem Plaintiff's motion withdrawn.

## I.   BACKGROUND

### A.   Procedural Background

Plaintiff Johnnie McCollum ("Plaintiff"), a convicted and sentenced state prisoner (Doc. No. 16 at 3), is currently in the custody of the Pennsylvania Department of Corrections.   On October 28, 2022, while Plaintiff was incarcerated as a pretrial detainee at Dauphin County Prison ("Prison") in Harrisburg, Pennsylvania, he filed a complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") against the following thirteen (13) Defendants: Michael H.W. Pries, George P. Hartwick, and Chad Saylor, Dauphin County Commissioners; John F. Cherry, the

President Judge of the Court of Common Pleas of Dauphin County; William Wenner, a Magisterial District Judge in Harrisburg, Pennsylvania; Nicholas Chimienti, the Sheriff of Dauphin County; James Markel, the Acting Controller of the Dauphin County Prison Board ("Prison Board"); Frank Lavery, Jr., a Solicitor of the Prison Board; Gregory Briggs, the Warden of the Prison; Lionel Pierre, the Deputy Warden of the Prison; Roger Lucas, the Major of Security at the Prison; Mike Welker, the Grievance Coordinator at the Prison; and Damon Fields, the Chaplain at the Prison.  (Doc. No. 1 at 1–6.)

In his complaint, Plaintiff alleged that the events giving rise to his claims occurred while he was incarcerated as a pretrial detainee at the Prison (Doc. No. 1 at 7) and generally concerned the following two (2) categories: lockdowns and access to religious material (id. at 7–14.  In connection with his various allegations,[1] Plaintiff asserted that his rights under the First and Fourteenth Amendments to the United States Constitution had been violated.  (Id. at 12.)  For relief, Plaintiff sought monetary damages, as well as various forms of injunctive relief.  (Id. at 12, 14.)

By Memorandum and Order dated December 14, 2022, the Court deemed Plaintiff's complaint filed, granted him leave to proceed in forma pauperis, and

---

[1]  Because Plaintiff is now proceeding on an amended complaint, the Court need not recount those allegations here. However, the Court notes that the allegations contained in Plaintiff's original complaint, have been fully set forth by the Court in its December 14, 2022 Memorandum.  (Doc. No. 5.)

dismissed his complaint without prejudice to him filing an amended complaint. (Doc. Nos. 5, 6.)  In particular, the Court found that, with respect to numerous Defendants, Plaintiff had failed to sufficiently allege their personal involvement in the acts that he claimed violated his federally protected rights.  (Doc. No. 5 at 9-10.) Because Plaintiff had failed to allege such personal involvement, the Court also found that his complaint did not provide fair notice of his claims and/or the grounds upon which those claims rest, as required by Rule 8 of the Federal Rules of Civil Procedure.  (Id. at 10–11.)  In addition, the Court found that, with respect to the Defendants Plaintiff discussed with some level of specificity, the complaint failed to state a Fourteenth Amendment claim upon which relief could be granted.  (Id. at 11– 17.)  And, finally, the Court dismissed Plaintiff's requests for injunctive relief as moot, because—during the pendency of this litigation—he was transferred from the Prison to a state correctional institution, and there was no alleged expectation that he would be returned to the Prison since he is now in the custody of the Pennsylvania Department of Corrections.  (Id. at 17–18.)

However, because the Court could not say that granting Plaintiff leave to amend his Section 1983 claims would be futile, the Court granted Plaintiff leave to file an amended complaint.  (Id. at 18–19.)  Following two (2) extensions of time (Doc. Nos. 8, 9, 10, 12), Plaintiff filed his amended complaint on April 5, 2023 (Doc. No. 16).  Shortly thereafter, on April 11, 2023, Plaintiff filed what appears to be a

continuation of his amended complaint.  (Doc. No. 18.)  In other words, Plaintiff's amended complaint has been filed in two (2) parts on the Court's docket.  (Doc. Nos. 16, 18.)

In his amended complaint, Plaintiff once again names the following Defendants: Pries; Hartwick; Saylor; Cherry; Wenner; Chimienti; Markel; Lavery; Briggs; Pierre; Welker; and Lucas.  (Id. at 1–5.)  He also names, for the first time, Joseph Curcillo III, the Chief Solicitor of Dauphin County, and Francis T. Chardo, the District Attorney of Dauphin County.  (Id. at 2, 5.)  The only Defendant, who was named in the original complaint that has not been named in the amended complaint is Defendant Fields, the Chaplain at the Prison.  Compare (Doc. No. 1) with (Doc. Nos. 16, 18).  As a result, Defendant Fields was previously terminated from the caption of this case.

In his amended complaint, Plaintiff reasserts allegations concerning his incarceration as a pretrial detainee at the Prison.  More specifically, he allege that he was denied the right to order books, magazines, and newsletters, and also denied the right to exercise, to have recreational opportunities, and to have a "healthful environement."  (Doc. No. 16 at 6–9.)  In connection with these allegations, Plaintiff asserts violations of his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution, as well as a violation of "17 61 P.A.C.S. Section 1724 Subsection (B)."  (Doc. No. 18 at 2.)  Unlike his original complaint, Plaintiff's

4

amended complaint expounds upon the factual basis of his claims, as well as the personal involvement of the Defendants.  (Doc. Nos. 16, 18.)  As a result, the Court directed the Clerk of Court to serve a copy of Plaintiff's amended complaint on the named Defendants.[2]

On June 5, 2023, counsel entered an appearance on behalf of Defendants and subsequently filed a waiver of the service of summons.  (Doc. Nos. 24, 25, 27.)  In addition, Defendants filed a motion to dismiss Plaintiff's amended complaint, along with a supporting brief.  (Doc. Nos. 32, 35.)  As reflected by the Court's docket, Plaintiff has not filed a brief in opposition to Defendants' motion to dismiss or sought an extension of time in which to do so.  However, Plaintiff did file a motion for leave to amend his amended complaint.  (Doc. No. 36.)  Notably, Plaintiff's motion to amend is not accompanied by a supporting brief or a proposed amended complaint.

### B.    Factual Background

In his amended complaint (Doc. Nos. 16, 18), Plaintiff sets forth the following allegations.  Plaintiff asserts that, while he was incarcerated at the Prison, he was denied the right: to order books and magazines "of [his] choice[;]" to have one hour

---

[2]  In addition to his amended complaint, Plaintiff also filed a motion seeking the appointment of counsel and a motion seeking class certification.  (Doc. Nos. 14, 15.) On May 25, 2023, the Court denied, without prejudice, both of these motions.  (Doc. Nos. 21, 22.)

per day of exercise; to have "consistent recreational opportunities[;]" and to have a "clean healthful environment."  (Doc. No. 16 at 6.)

In support of his assertion that he was denied the right to order books and magazines, Plaintiff sets forth various allegations concerning his attempts to administratively grieved this claim at the Prison.  See (id. at 6–7.)  For instance, Plaintiff alleges that: he submitted grievances to Defendant Briggs, "addressing the inadequacy of the library[;]" he received "a grievance appeal" from Defendant Pries; and the Prison Board "voted to deny" his grievance.  (Id. at 6.)  Plaintiff also alleges, however, that he subsequently received a response from Defendant Lavery, which stated that his grievance was approved in part and denied in part and that, within sixty (60) days, the "administration" would develop procedures to allow inmates access to materials not currently provided.  (Id. at 7.)  Finally, Plaintiff alleges that he appealed and received a response from Defendant Curcillo.  (Id.)  In connection with these various allegations, Plaintiff seems to suggest that the "Prison Board recognize[d] the need to let [inmates] order magazines and legal subscription[,]" but did not put any "procedures" into "place to allow" inmates to do so.  (Id.)

In support of his assertions that he was denied the right to exercise and the right to recreational opportunities, Plaintiff alleges that there were continuous lockdowns at the Prison such that he "was locked down 19–23 days" per "month" because of "a severe staff shortage."  (Id. (stating that "out of 30 days, I was locked

6

down 19–23 days").)   Because of this staff shortage, Plaintiff could not "attend programs, have regular recreation, receive [c]onsistent visits," or "go to [the] gym everyday for a [sic] hour to exercise."  (Id. at 8; id. at 7 (claiming that, after two-and-a-half years at the Prison, he has been unable to complete one program and that he was "forced to appear in front of the Judge with no programs completed"); Doc. No. 18 at 1 (stating that confining inmates to their cells "because of something out of their control is not a healthful environment").)   Plaintiff claims that he put Defendant Briggs, Pierre, Lucas, Welker, and every member of the Prison Board on notice of these conditions.  (Doc. No. 16 at 7.)  Plaintiff also claims that, although he has attempted to administratively grieve this issue, he was told that "prison schedules are not up for negation with inmates" (id. at 8) and, further, that this issue was "non grieveable" (id. at 9).

In addition, Plaintiff asserts that he "had people from the community attending the Dauphin County Prison Board[ ] meetings and bringing up the lockdown situation" and how it is affecting the inmates, but that the answer "was always[,] 'we are working on it.'"  (Id.)  Plaintiff asserts that the Prison Board is "well aware" of the conditions at the Prison and how those conditions contribute to the "depression" of inmates.  (Id.)  Plaintiff further asserts that the "solution" is to "increase the pay and people will come and work."  (Id.)

In connection with all of these allegations, Plaintiff claims that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution and, also, that they violated "17 61 P.A.C.S. Section 1724 Subsection (B)." (Doc. No. 18 at 2.) As a result of these alleged violations, Plaintiff asserts that he has suffered from "[s]evere depression, anxiety, panic depression, bipolar mood sings," and "difficulties with thinking and concentrating]" (Id.; id. at 3 (stating that he had to "go[ ] on psych medication" because of his "level of depression . . . "). For relief, Plaintiff seeks: (1) an order from the Court compelling the Board "to add incentives to attract more guards[;]" (2) "[i]mplement a [p]ublishers only rule so individuals can orders books, magazines, [and] news letters[;]" and (3) monetary relief. (Id. at 2.) In support of his claims and requests for relief, Plaintiff has attached to his amended complaint various administrative remedy documents that Plaintiff filed at the Prison, and the responses he received. (Doc. Nos. 18-1 at 2–14; 18-2 at 1–7; 18-3 at 1–9; 18-4 at 1–5.)

## II.   LEGAL STANDARD

In order to survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). And a claim is plausible on its face when the complaint

contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." See Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

When considering a Rule 12(b)(6) motion, the court "accept[s] as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them." See Taksir v. Vanguard Grp., 903 F.3d 95, 96-97 (3d Cir. 2018) (citation and internal quotations omitted). The court also construes the factual allegations "in the light most favorable to the plaintiff[.]" See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010) (citation and internal quotations omitted). The court, however, is not required to credit "conclusions of law" or to draw "unreasonable factual inferences." See Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc., 450 F.3d 130, 133 (3d Cir. 2006).

Additionally, the United States Court of Appeals for the Third Circuit has outlined a three-step process to determine whether a complaint meets the pleading standard established by Twombly and Iqbal. See Connelly v. Lane Const. Corp., 809 F.3d 780, 787 (3d Cir. 2016). First, the court "must 'tak[e] note of the elements [the] plaintiff must plead to state a claim.'" See id. (quoting Iqbal, 556 U.S. at 675) (alterations in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" See id. (quoting Iqbal, 556 U.S. at 679). And, third, "'[w]hen there are well-pleaded

factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" See id. (quoting Iqbal, 556 U.S. at 679).

## III. DISCUSSION

### A. Plaintiff's Motion Amend

Plaintiff has filed a motion for leave to amend his amended complaint. (Doc. No. 36.)   However, Plaintiff has not filed a brief in support of his motion or a proposed amended complaint, as required by the Local Rules of this Court.   See M.D. Pa. L.R. 7.5 (providing that: "[w]ithin fourteen (14) days after the filing of any motion, the party filing the motion shall file a brief in support of the motion[,]" and that, "[i]f a supporting brief is not filed within the time provided in this rule the motion shall be deemed to be withdrawn"); M.D. Pa. L.R. 15.1 (instructing that: "[w]hen a party files a motion requesting leave to file an amended pleading, the proposed amended pleading must be retyped or reprinted so that it will be complete in itself including exhibits and shall be filed on paper as a separate document or, in the Electronic Filing System, as an attachment to the motion" ).   As a result, the Court will deem Plaintiff's motion withdrawn.

### B. Defendants' Motion to Dismiss

Defendants have filed a motion to dismiss Plaintiff's amended complaint. (Doc. No. 32.)   In connection with their motion, Defendants have also filed a

supporting brief, setting forth various arguments.  (Doc. No. 35.)  As reflected by the Court's docket, however, Plaintiff has not filed an opposition brief.  Thus, under the Court's Local Rules, he is deemed not to oppose Defendants' motion.  See M.D. Pa. L.R. 7.6 (providing, in pertinent part, as follows: "[a]ny party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion[;]" and "[a]ny party who fails to comply with this rule shall be deemed not to oppose such motion . . . ").  That said, the Court addresses Defendants arguments in turn.

## 1.    Individual Members of the Prison Board

Initially, Defendants argue that the members of the Prison Board (i.e., Defendants Pries, Hartwick, Saylor, Cherry, Wenner, Chimienti, Markel, Lavery, Jr., Curcillo, and Chardo) are not proper defendants in this action.  (Doc. No. 35 at 7–8.)  In support, they point to Newman v. Burrows, 22-cv-00556, 2023 WL 4360554, at *1 (W.D. Pa. May 3, 2023), report and recommendation adopted, No. CV 22-556, 2023 WL 4100401 (W.D. Pa. June 21, 2023), and argue that this case is "on point."  (Doc. No. 35 at 7.)  In Newman, the prisoner-plaintiff brought suit against numerous defendants concerning alleged violations of his civil rights while he was incarcerated as a pretrial detainee at the Mercer County Jail.  See id. at *1.

11

Among the defendants named was the Mercer County Prison Board.  See id. at *2.
In moving for dismissal of the plaintiff's amended complaint, the county defendants
argued that the individual members of the prison board were not proper defendants.
(Id. at *4.)  In support, they asserted that "Pennsylvania law expressly vests control
and supervision over a county jail . . . in a prison board of inspectors pursuant to 61
Pa. C.S.A. § 1731(a)."  See id. (citation omitted).  As a result, they argued,  "no
individual member ha[d] final policymaking authority and [was, instead,] subject to
the will of the other members[.]"  See id.  The court agreed, stating as follows:
"because the individual members of the Prison Board lack final policymaking or
supervisory authority to act alone, they cannot be held individually liable[.]"  See id.
Based upon this case, Defendants argue that the individual members of the Prison
Board should be dismissed from this action.

The Court turns to the statutory law cited by Defendants.  Specifically, that
law provides for boards of inspectors of county jails or prisons "[i]n counties of the
third, fourth and fifth class[.]"  See 61 Pa. C.S.A. § 1731(a)(1).  Dauphin County is
considered a county in the third class.[3]  In addition, the board is comprised of the
following members: the president judge of the court of common pleas or a judge

---

[3]   Information concerning county classes in Pennsylvania is available at the
following website:

https://www.pacourts.us/news-and-statistics/research-and-statistics/dashboard-
table-of-contents/resources/WebHelp/General_Information/County_Classes.htm.

designated by him; the district attorney; the sheriff; the controller; and the county commissioners.  See id. § 1731(a)(2).  "[T]he board and the officers appointed by it" are authorized to "provide for the safekeeping, discipline and employment of inmates and the government and management of the correctional institution."  See id. § 1731(a)(3).  The board is also empowered to "make such rules and regulations for the government and management of the county correctional institution and the safekeeping, discipline and employment of the inmates, as may be deemed necessary."  See id. § 1732(b); see also id. § 1732(a) (providing that "[a] majority of the members of the board shall constitute a quorum for the transaction of business, and all actions of the board shall be by the approval of a majority of all the members of the board").  Thus, based upon this statutory law, the rules and regulations for the government and management of the prison, as well as the health and safekeeping of the inmates, are the responsibility of the board.  See id. §§ 1731, 1732.

In addition to this statutory law, federal courts have held, in the context of Section 1983 claims arising in Pennsylvania, that a prison board "would be the proper defendant against which to assert Monell liability for unlawful prison policies or customs[.]"[4]  See White v. Pennsylvania, 22-cv-01692, 2024 WL 915558, at *1

---

[4] See Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 690–91 (1978) (explaining that local governmental entities "can be sued directly under [Section] 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers" or

(M.D. Pa. Mar. 4, 2024); <u>Fleckenstein v. Crawford</u>,14-cv-01085, 2015 WL 5829758, at *7 (M.D. Pa. Oct. 1, 2015) (adopting report and recommendation that the plaintiffs had adequately stated a municipal liability claim under Section 1983 against the county prison board); <u>Bradley v. PrimeCare Med. Inc.</u>, No. 12-cv-00292, 2013 WL 1149267, at *6–7 (M.D. Pa. Mar. 19, 2013) (explaining that Pennsylvania law specifically provides that the county prison board is responsible for the policies and management of the county prison, not the county itself); <u>Goodine v. Lackawanna Cnty. Sheriff</u>, 8-cv-01898, 2010 WL 830956, at *5 (M.D. Pa. Mar. 4, 2010) (stating that a county prison board is a local government unit and is, therefore, amenable to suit under Section 1983); <u>see also</u> <u>Williams v. Delaware Cnty. Bd. of Prison Inspectors</u>, 844 F. App'x 469, 475 (3d Cir. 2021) (unpublished) (recognizing the defendant's arguments that the Pennsylvania county was not liable for the pretrial detainee's Section 1983 claim because the county did not exercise control over the correctional facility under Pennsylvania law and that, instead, the prison board controlled the administration of the facility (citing, in part, 61 Pa. C.S.A. § 1731)).

---

where a "constitutional deprivation[ ]" was caused by a "governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels"); <u>Mulholland v. Gov't Cnty. of Berks, Pa.</u>, 706 F.3d 227, 237 (3d Cir. 2013) (providing, in the context of municipality liability under Section 1983, that a local governmental entity is "liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom" (citations omitted)).

Thus, in applying all of these principles here, the Court observes that Plaintiff's amended complaint, while it names the individual members of the Prison Board, does not challenge the conduct of the individual members, and, instead, challenges the conduct of the Prison Board, as whole. The Court finds that this is consistent with Pennsylvania law, which requires approval of a majority of the members of the Prison Board for actions taken by the Prison Board. See id. 61 Pa. C.S.A. § 1732(a) (providing that "[a] majority of the members of the board shall constitute a quorum for the transaction of business, and all actions of the board shall be by the approval of a majority of all the members of the board").

Accordingly, the Court will grant Defendants' motion to dismiss the individual members that comprise the Prison Board and will direct Plaintiff to file an amended pleading naming the Prison Board as a defendant. See 61 Pa. C.S.A. §§ 1731, 1732; Tarapchak v. Lackawanna Cnty., 173 F. Supp. 3d 57, 85 (M.D. Pa. 2016) (stating that, "[i]n Pennsylvania, the prison board is the authorized policymaker for county prisons, tasked with making policy decision regarding the safekeeping, discipline, and employment of inmates").

## 2.    Prison Defendants' Personal Involvement

Next, Defendants argue that Plaintiff's amended complaint has not alleged their personal involvement in this Section 1983 action. (Doc. No. 35 at 8–10.) With respect to the Prison individuals (i.e., Defendants Briggs, Pierre, Lucas, and Welker),[5] Defendants argue that they had no personal involvement in the alleged denial of Plaintiff's ability to exercise, engage in recreational opportunities, or order books and magazines. (Id. at 8.)  In addition, they argue that their mere involvement in the grievance process at the Prison is "[n]ot [e]nough."  (Doc. No. 35 at 8.) Accordingly, based upon this lack of personal involvement, Defendants contend that they should be dismissed.  (Id.)  The Court agrees, but only in part.

In order to plausibly state a claim under Section 1983, a plaintiff must allege that each defendant was personally involved in the act or acts that the plaintiff claims violated his federally protected rights.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct."  Chavarriaga v. New

---

[5]   Because the Court will dismiss the individual members of the Prison Board as Defendants and will grant Plaintiff leave to file an amended pleading naming the Prison Board as a Defendant, the Court need not address Defendants' remaining arguments concerning the individual members of the Prison Board.  The remainder of the Court's discussion will, therefore, be focused on Defendants Briggs, Pierre, Lucas, and Welker.  For ease of reference, the Court will refer collectively to these Defendants as the "Prison Defendants."

16

Jersey Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015) (citing Rode, 845 F.2d at 1207); Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (stating that "[p]ersonal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence'" (quoting Rode, 845 F.2d at 1207)).

Generally speaking, the mere filing of a grievance is insufficient to impute the actual knowledge that is necessary to demonstrate a defendant's personal involvement in an asserted constitutional violation.  See Rode, 845 F.2d at 1207–08 (finding that the filing of a grievance with the Governor-defendant's office was insufficient to demonstrate that the Governor himself had personal knowledge of the alleged wrongdoing).  In addition, grievances that complain of events that have already occurred and that are in the past are not sufficient to show that defendants who respond to such grievances were personally involved in the asserted constitutional violations.  See Robles v. Casey, No. 10-cv-02663, 2011 WL 398203, at *2 (M.D. Pa. Feb. 3, 2011) (concluding that plaintiff had not shown personal involvement where "plaintiff's grievance only reported violations that had occurred in the past").

Under certain circumstances, however, a grievance may be sufficient to place a defendant on notice of continued wrongdoing and, thus, may show actual knowledge of and acquiescence in the events that form the basis of a plaintiff's asserted constitutional claims.  See, e.g., Sutton v. Rasheed, 323 F.3d 236, 249–50

(3d Cir. 2003), as amended (May 29, 2003) (finding that prisoner-plaintiffs had established the personal involvement of a defendant who had played an "active role" in the continued denial of plaintiffs having access to religious texts and basing this finding, in part, on the fact that the defendant had issued a written response denying a final-grievance-appeal letter from one of the plaintiffs, which requested access to such religious texts); Diaz v. Palakovich, 448 F. App'x 211, 215 (3d Cir. 2011) (unpublished) (vacating district court's grant of summary judgment where the district court had failed to consider grievances pertaining to a pattern of ongoing wrongful conduct, and explaining that a reasonable factfinder could find that (a) the defendants had knowledge of such wrongful conduct through the prisoner's grievances and (b) had acquiesced in such conduct by failing to address the ongoing pattern of wrongful conduct).

Thus, on one hand, the Court acknowledges that merely responding to an inmate's grievance that complains of events that have already occurred and are in the past does not constitute the knowledge and acquiescence that is necessary to show personal involvement under Section 1983. On the other hand, however, the Court also acknowledges that responding to a grievance that complains of events that are ongoing and denying the requested relief may constitute the knowledge and acquiescence that is necessary to show personal involvement in a Section 1983 action. That said, the Court turns to Plaintiff's amended complaint.

### a.      Defendants Pierre, Lucas, and Welker

With respect to Defendants Pierre, Lucas, and Welker, Plaintiff's amended complaint alleges that they: (a) were informed through the grievance process that Plaintiff was being denied the right to exercise, engage in recreational opportunities, and have a "healthful" environment; and (b) responded to Plaintiff's grievances by denying his requests for relief.  (Doc. No. 16 at 7.)  In addition to these allegations, Plaintiff has attached documentation to his amended complaint showing that Defendants Pierre, Lucas, and Welker had, in fact, denied Plaintiff's grievances complaining about the lockdowns at the Prison.  See, e.g. (Doc. Nos. 18-2 at 1, 7 (Defendant Welker's denial); 18-3 at 1–2 (Defendant Welker's denials); 18-2 at 2 (Defendant Lucas's denial); 18-4 at 3 (Defendant Pierre's denial)).  Accordingly, the Court will deny Defendants' motion to the extent that they seek dismissal of this Section 1983 claim against Defendants Pierre, Lucas, and Welker.  The Court will grant their motion, however, to the extent that Defendants Pierre, Lucas, and Welker seek dismissal of Plaintiff's Section 1983 claim concerning the availability of books and magazines at the Prison. There are neither allegations in the amended complaint nor documentation attached to the amended complaint which would suggest that Defendants Pierre, Lucas, and Welker had any personal involvement in the denial of books and magazines.

**b.    Defendant Briggs**

With respect to Defendant Briggs, Plaintiff's amended complaint alleges that Defendant Briggs was "put on notice" of the lockdowns (Doc. No. 16 at 7) because Plaintiff wrote to Defendant Briggs about these conditions at the Prison (id. at 8). In support of this allegation, Plaintiff has attached to his amended complaint a letter that he sent to Defendant Briggs, which discusses, inter alia, the "incessant lockdowns" at the Prison.  (Doc. No. 18-2.)  In addition, Plaintiff has also attached a document which reveals that Defendant Welker had responded to one of Plaintiff's grievances concerning the lockdowns at the Prison, stating: "the cancellation of visits is due to security concerns.  The Warden is looking at . . . video visits."  (Doc. No. 18-2 at 1.)  Thus, while Plaintiff does not appear to allege that Defendant Briggs responded to his letter, the Court finds that there is a plausible inference that Defendant Briggs knew about and acquiesced in the lockdowns at the Prison. Accordingly, the Court will deny Defendants' motion to the extent that they seek dismissal of this Section 1983 claim against Defendant Briggs based upon Plaintiff's failure to allege personal involvement.

The Court will also deny their motion to the extent that they seek dismissal of Plaintiff's Section 1983 claim concerning books and magazines against Defendant Briggs.  Plaintiff alleges that he wrote to Defendant Briggs on umerous occasions about the inadequacy of the library at the Prison.  (Doc. No. 16 at 6.)  In addition to

these allegations, Plaintiff has attached to his amended complaint numerous inmate request forms that he sent to Defendant Briggs concerning the denial of books and magazines. (Doc. No. 18-2 at 2–8.) Further, Plaintiff has shown that this issue was appealed beyond the Prison level and to the Prison Board of Inspectors Chairman (Doc. No. 18-1 at 10), the full Prison Board (id. at 11), and the Chief Solicitor (id. at 12). Based upon Plaintiff's allegations and these subsequent appeals, which are supported by documentation attached to Plaintiff's amended complaint, there is a plausible inference that Defendant Briggs knew about and acquiesced in the availability (or lack thereof) of books and magazines at the Prison.

### 3.   Plaintiff's Section 1983 Claims Against Prison Defendants

Given the alleged personal involvement of Defendants Briggs, Pierre, Lucas, and Welker, the Court proceeds by addressing Plaintiff's Section 1983 claims. As set forth above, Plaintiff asserts violations of his First Amendment and Fourteenth Amendment rights. (Doc. Nos. 16, 18.) The Court addresses these asserted violations in turn.

### a.   First Amendment

In his amended complaint, Plaintiff asserts that he should be afforded "[t]he right to order books and magazines of [his] choice." (Doc. No. 16.) Because he was not permitted to do so at the Prison, Plaintiff claims that his First Amendment rights were violated while he was incarcerated there. (Id.) In their motion to dismiss and

supporting brief, Defendants argue that Plaintiff is not entitled to any and all books of his choosing.  (Doc. No. 35 at 11–13.)  The Court agrees.

With respect to the prison setting, the United States Supreme Court has explained that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison[,]" and, thus, they "clearly retain protections afforded by the First Amendment[.]"  See O'Lone v. Est. of Shabazz, 482 U.S. 342, 348 (1987) (citations and internal quotation marks and citations omitted).  Indeed, "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution."  See Turner v. Safley, 482 U.S. 78, 84 (1987).

That said, however, the Supreme Court has recognized that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government."  See id. at 84–85.  Accordingly, the Supreme Court has rejected application of a strict scrutiny standard to prison regulations that impinge on constitutional rights, and, instead, has adopted the following standard: "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  See id. at 89 (alteration omitted); see also id. at 89–91 (explaining that, in determining the reasonableness of a prison regulation that infringes on inmates'

constitutional rights, courts are to consider several factors).  Ultimately, this standard "ensures the ability of corrections officials to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration[,] . . . and[, additionally, this standard] avoids unnecessary intrusion of the judiciary into problems particularly ill suited to resolution by decree."  See O'Lone, 482 U.S. at 349–50 (citations and internal quotation marks omitted).

Here, from what the Court can discern, Plaintiff's amended complaint does not challenge any Prison policy or regulation.  Rather, his complaint makes clear that he simply wants to be able to order any book or magazine that he desires.  (Doc. No. 16 at 6.)  Such a desire, however, is not consistent with legitimate penological objectives of the corrections system.  See Mack v. Warden Loretto FCI, 839 F.3d 286, 298 (3d Cir. 2016) (stating that a prisoner "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system").  Indeed, unfettered access to any and all books and magazines implicate obvious security issues.  See, e.g., Bell v. Wolfish, 441 U.S. 520, 551 (1979) (explaining that hardback books, which are difficult to search effectively, "are especially serviceable for smuggling contraband into an institution; money, drugs, and weapons easily may be secreted in the bindings").  In fact, Plaintiff acknowledges as much in one of the grievances he filed at the Prison concerning the alleged denial of books and magazines.  (Doc. No. 18-

23

1 at 7 (stating as follows: "Im [sic] going to be totally honest[,] I acknowledge there is an issue with drug use here at this facility . . . ").)

Moreover, the Court cannot say that the alleged restriction on Plaintiff's ability to order <u>any</u> book or magazine that he desires (Doc. No. 16 at 6) is an "exaggerated response" to such legitimate penological interests.  <u>See</u> <u>Beard v. Banks</u>, 548 U.S. 521, 528 (2006) (explaining that prison restrictions are "permissible if they are reasonably related to legitimate penological interests, . . . and are not an exaggerated response to such objectives" (citation, internal citation, and internal quotation marks omitted)).  Indeed, Plaintiff has attached documentation to his amended complaint, which suggests that: (1) there were over eight-hundred and seventy (870) "titles" in the library collection at the Prison while he was incarcerated there, and "more titles are being added regularly" (Doc. No. 18-1 at 10); and (2) the Prison was working towards providing inmates with even more access to magazines/periodicals and newspapers (<u>id.</u> at 11, 12).

Furthermore, in light of Plaintiff's broad desire to be able to order any book or magazine he desires, the Court emphasizes the Supreme Court's admonition that federal courts owe "substantial deference to the professional judgment of prison administrators[,]" <u>see, e.g.</u>, <u>Overton v. Bazzetta</u>, 539 U.S. 126, 132 (2003), and that, sometimes, the Constitution "permits greater restriction" of an individual's rights "in a prison than it would allow elsewhere."  <u>See</u> <u>Beard</u>, 548 U.S. at 528 (upholding

Pennsylvania Department of Corrections' policy restricting inmate access to newspapers, magazines, and photographs and concluding that it was justified by the need to provide particularly difficult prisoners with incentives for better behavior).

Thus, for all of these reasons, the Court agrees with Defendants that Plaintiff's complaint fails to state a First Amendment claim upon which relief can be granted. As such, the Court will grant Defendants' unopposed motion and dismiss Plaintiff's First Amendment claim.

### b.    Fourteenth Amendment

In his amended complaint, Plaintiff's remaining claims concern the conditions of his confinement. (Doc. No. 16.) More specifically, Plaintiff alleges that, while he was incarcerated as a pretrial detainee at the Prison, he was denied the right to have one hour per day of exercise, to have "consistent recreational opportunities[,]" and to have a "clean healthful environment." (Id. at 6.) Each of these alleged conditions have the same cause (i.e., severe staff shortage at the Prison) and the same remedy (i.e., increased wages for prison guards).

When pretrial detainees, such as Plaintiff,[6] "challenge their conditions of confinement, [courts] must consider whether there has been a violation of the Due

---

[6] The Court agrees with Defendants (Doc. No. 35 at 14) that it is difficult to discern, if Plaintiff was a pretrial detainee at all times relevant to his amended complaint or, if at any time therein, he became a convicted and sentenced state prisoner. Thus, for purposes of the Court's discussion, the Court will, as Defendants did (id.), afford Plaintiff the benefit of the doubt that he was a pretrial detainee.

Process Clause of the Fourteenth Amendment." E. D. v. Sharkey, 928 F.3d 299, 307

(3d Cir. 2019) (quoting Hubbard v. Taylor, 538 F.3d 229, 231 (3d Cir. 2008)).

The Supreme Court has instructed that, when "evaluating the constitutionality of

conditions or restrictions of pretrial detention that implicated only the protection

against deprivation of liberty without due process of law, . . . the proper inquiry is

whether those conditions amount to punishment of the detainee." See Bell v.

Wolfish, 441 U.S. 520, 535 (1979).  Thus, "[u]nder the Due Process [C]lause, 'a

detainee may not be punished prior to an adjudication of guilt.'" See Sharkey, 928

F.3d at 307 (quoting Bell, 441 U.S. at 535).

In determining whether the challenged conditions of confinement amount to

punishment of the pretrial detainee, "[courts] must decide whether [the challenged

condition] is imposed for the purpose of punishment or whether it is but an incident

of some other legitimate governmental purpose." See Bell, 441 U.S. at 538 (citation

omitted); see also Hope v. Warden York Cnty. Prison, 972 F.3d 310, 326 (3d Cir.

2020) (stating that "[t]he touchstone for the constitutionality of detention is whether

conditions of confinement are meant to punish or are but an incident of some other

legitimate governmental purpose" (citations and internal quotation marks omitted)).

Thus, this determination requires courts to consider whether the challenged

conditions were imposed "for the express purpose of punishment, and if not, whether

they are rationally connected to a legitimate purpose but excessive in relation to its

26

purpose." See id. at 328 (citing Bell, 441 U.S. at 538).  In making this determination, courts are to "consider the totality of the circumstances of confinement[.]"  See id. at 326 (explaining that "the totality of the circumstances of confinement" includes "any genuine privations or hardship over an extended period of time, and whether [the challenged] conditions are (1) rationally related to their legitimate purpose or (2) excessive in relation to that purpose" (citations omitted)).

In addition, and importantly, "courts must acknowledge that practical considerations of detention justify limitations on 'many privileges and rights.'"  See id. (quoting Bell, 441 U.S. at 545–46).  Thus, even though a pretrial detainee is not a convicted prisoner, "a detainee 'simply does not possess the full range of freedoms of an unincarcerated individual.'"  See id. (quoting Bell, 441 U.S. at 546).  In a similar vein, courts must also acknowledge "the legitimate objectives and difficulties of managing a detention facility[.]"  See id. (citation omitted). Judicial deference is, therefore, accorded to a prison administrator "not merely because the administrator ordinarily will, as a matter of fact in a particular case, have a better grasp of his domain than the reviewing judge, but also because the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial."  See Bell, 441 U.S. at 548 (citations omitted).

Thus, in accordance with this governing legal standard, the Court must consider whether the challenged conditions (i.e., the lockdowns at the Prison) were

27

for the purpose of punishment, and if not, whether the conditions were rationally related to a legitimate purpose or excessive in relation to that purpose.  See Hope, 972 F.3d at 328 (explaining that courts are to consider whether the challenged conditions were imposed "for the express purpose of punishment, and if not, whether they are rationally connected to a legitimate purpose but excessive in relation to its purpose" (citing Bell, 441 U.S. at 538)).

In his amended complaint, Plaintiff alleges that there were continuous lockdowns at the Prison such that he "was locked down 19–23 days" per "month" because of "a severe staff shortage." (Doc. No. 16 at 7.)  As a result of this alleged staff shortage, Plaintiff could not "attend programs, have regular recreation, receive [c]onsistent visits," or "go to [the] gym everyday for a [sic] hour to exercise."  (Id. at 8; id. at 7 (claiming that, after two-and-a-half years at the Prison, he has been unable to complete one program and that he was "forced to appear in front of the Judge with no programs completed"); Doc. No. 18 at 1 (stating that confining inmates to their cells "because of something out of their control is not a healthful environment").)

Having reviewed these allegations, the Court finds that Plaintiff's amended complaint does not allege that the lockdowns at the Prison were imposed for the purpose of punishment.  Instead, his amended complaint expressly alleges that the lockdowns were imposed because of a "staff shortage."  (Id. at 7.) As a result, the

Court cannot say that Plaintiff's complaint has shown that the challenged conditions (i.e., the lockdowns at the Prison) were imposed for the purpose of punishment.  See Bell, 441 U.S. at 538 (explaining that "[a] court must decide whether the [challenged condition] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose" (citation omitted)).

In addition, the Court finds that Plaintiff's amended complaint does not allege sufficient facts concerning the "totality of the circumstances of confinement[.]"  See Hope, 972 F.3d at 326.  For instance, Plaintiff's complaint does not set forth any allegations concerning: how long each lockdown lasted; the restrictions that were placed upon him when these lockdowns occurred; the size of his living space or the extent to which he was permitted to move, if at all, throughout the Prison during these lockdowns; or any other circumstances that would clarify the conditions in which he was held in connection with these lockdowns.  See Hubbard, 538 F.3d at 233 (citing Ferguson v. Cape Girardeau County, 88 F.3d 647, 650 (8th Cir. 1996) for the following proposition: "[i]n evaluating the conditions, the court must look to a number of factors, including the size of the detainee's living space, the length of confinement, the amount of time spent in the confined area each day, and the opportunity for exercise"); Chapolini v. City of Philadelphia, No. 22-cv-284, 2022 WL 815444, at *12 (E.D. Pa. Mar. 17, 2022) (dismissing the pretrial detainee's Fourteenth Amendment claim concerning the lockdown measures ordered by the

commissioner of the Philadelphia prison system for failure to set forth sufficient facts). In addition, while Plaintiff's amended complaint claims that he was denied "regular recreation" and "programs" (Doc. No. 16 at 8), his complaint fails to specify any of the circumstances surrounding such denials—such as, what recreation and programs Plaintiff sought to attend, whether the Prison offered such recreation and programs, and what impact, if any, his alleged inability to attend the programs would have had on him. At most, he claims that he was unable to show a judge that he did not complete any programs.

As a result, the Court cannot say that the lockdowns at the Prison—even if not imposed for the purpose of punishment—amount to punishment because they were excessive in relation to the issues surrounding the alleged "staff shortage" at the Prison. See Hope, 972 F.3d at 326 (explaining that, absent an intent to punish, courts are to look at "the totality of the circumstances of confinement[,]" which includes whether the challenged "conditions are (1) rationally related to their legitimate purpose or (2) excessive in relation to that purpose" (citations omitted)).

Thus, for all of these reasons, the Court finds that Plaintiff's amended complaint fails to state a claim under the Fourteenth Amendment claim upon which relief can be granted. The Court will, therefore, dismiss Plaintiff's Fourteenth Amendment claim.

### 4.        Plaintiffs Claim Based Upon Pennsylvania Statute

In his amended complaint, Plaintiff claims that there has been a violation of the following Pennsylvania statute, 61 Pa. C.S.A. § 1724.  Specifically, Plaintiff asserts that Defendants violated Section (b) of that statute, which provides as follows: "**(b) Living conditions.--**The board shall ensure that the living conditions within the prison and alternative housing facilities are healthful and otherwise adequate." See 61 Pa.C.S.A. § 1724(b).

In response, however, Defendants argue that, for all of the reasons discussed in their motion to dismiss and supporting brief, Plaintiff's amended complaint has failed to state a constitutional deprivation under Section 1983.  (Doc. No. 35 at 18–19.)   Defendants further argue that, because Plaintiff's amended complaint has failed to do so, any alleged violation of 61 Pa.C.S.A. § 1724 should also be dismissed.  (Id.)

Although the precise contours of this claim are unclear to the Court, it appears that Plaintiff's alleged violation of 61 Pa.C.S.A. § 1724 is based upon the lockdowns at the Prison.  As set forth above, however, Plaintiff's amended complaint fails to describe the factual circumstances surrounding the lockdowns.  Thus, until Plaintiff has filed an amended pleading clarifying these circumstances, the Court will refrain from addressing the alleged violation of this Pennsylvania statute, at this time.

### C.   Leave to Amend

The next issue is whether Plaintiff should be granted leave to amend his amended complaint.  Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits."  See Foman, 371 U.S. at 182 (citation and internal quotation marks omitted).  However, the Court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment[.]"  See id.

In accordance with this standard, the Court will grant Plaintiff a **<u>final</u>** opportunity to amend so that he can name the Prison Board as a Defendant and so that he can amend his pleading in order to attempt to cure the deficiencies identified above.  Plaintiff is advised that his second amended complaint must be complete in all respects.  It must be a new pleading that stands by itself without reference to the complaint, amended complaint, or any other document already filed.  His second amended complaint shall set forth his claims in short, concise, and plain statements

as required by Rule 8 of the Federal Rules of Civil Procedure.  Finally, neither conclusory allegations nor broad allegations will set forth a cognizable claim.[7]

## IV.   CONCLUSION

To conclude, the Court will grant in part and deny in part Defendants' motion to dismiss Plaintiff's amended complaint.  (Doc. No. 32.)  In addition, the Court will deem Plaintiff's motion for leave to amend his amended complaint withdrawn. (Doc. No. 36.)  Finally, the Court will grant Plaintiff a final opportunity to amend his pleading.  An appropriate Order follows.

Dated: April 2, 2024                    s/ Sylvia H. Rambo
                                        SYLVIA H. RAMBO
                                        United States District Judge

---

[7]  Because Plaintiff will be afforded the opportunity to file an amended pleading, the Court will refrain from addressing Defendants' qualified immunity argument at this time. (Doc. No. 35 at 19–20.)  Defendants are free, of course, to reassert this argument following the filing of Plaintiff's amended pleading.